IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

KRISTEN J. GLEMSER,           )
                              )
        Plaintiff,            )
                              )
    v.                        )        NO. 09-3321
                              )
SUGAR CREEK REALTY, LLC, d/b/a )
PINE WOODS APARTMENTS,        )
                              )
        Defendants.           )

## OPINION

RICHARD MILLS, U.S. District Judge:

Defendant's Motion for Summary Judgment is Allowed.

## I. INTRODUCTION

Plaintiff Kristen J. Glemser ("the Plaintiff" or "Glemser") filed a Complaint against Defendant Sugar Creek Realty, LLC ("the Defendant" or "Sugar Creek"), her former employer. The Complaint alleges claims for sexual harassment and constructive discharge under Title VII. The former claim is based on alleged severe and pervasive harassment on December 7, 2006, by the Plaintiff's supervisor. The Plaintiff further asserts that the alleged harassment led to Glemser's constructive discharge because of the

intolerable working conditions which occurred that day.  The Plaintiff alleges she substantially followed the Defendant's sexual harassment policy, while Sugar Creek did not after it learned of the incident.

## II. FACTUAL BACKGROUND

### A. Events of December 7, 2006

The Plaintiff, who was formerly employed as marketing/leasing agent at Pine Woods Apartments, filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment by the Defendant.  The EEOC Charge and Complaint discuss what the Plaintiff alleges is a series of events occurring on a single day, December 7, 2006, which constituted sexual harassment.  Glemser testified that her EEOC Charge included a complete account of her allegations.

The Plaintiff admitted in her deposition that the only person who she believes sexually harassed her was Theresa C. Lorton.  Glemser testified that she did not tell Lorton to stop the purported harassment because she believed she could lose her job.

Some of the Sugar Creek staff planned a small birthday party for

2

Angie McKenzie, who was the girlfriend of Springfield police officer Nayt Stewart. Stewart provides security for the apartment complex. The Plaintiff was not one of the planners of the event. Lorton admitted it was her idea to have the party at the office. The party for McKenzie was planned for the late afternoon of December 7, 2006.

The Defendant alleges that as a gag gift, one of the party goers bought several pairs of shorts described by the Defendant as "boy shorts" because McKenzie had been turned down for a job at Show-Me's restaurant. Glemser disputes the allegation and alleges that a party goer brought several pairs of underwear to the party, which would be worn under the shorts of an employee at Show-Me's restaurant.

As part of the joke, Lorton and some of the other women modeled the shorts. Glemser states she did not wear the underwear as part of the joke. She was forced to wear the outfit when Lorton began to remove Glemser's pants.

The Defendant contends that during her employment at Sugar Creek, the Plaintiff talked openly to people about her modeling career, the alias

3

she used, a calendar that she had made, that she had been featured in a men's magazine and she brought copies of the magazine to the office to show people.  The Plaintiff admitted that her modeling photographs show her in considerably less clothing than the shorts worn at the party.[1]

According to Glemser's testimony, the party in Sugar Creek's social center was underway as early as 10:00 a.m. on December 7, 2006.  Some individuals were intoxicated.  The Plaintiff states that she left the party to purchase vodka because her supervisor asked her.  Glemser testified she thought that if she brought vodka back, Lorton and the rest of the people would leave the office and allow her to do her job.  After she returned with vodka, the party goers ate breakfast.  The Plaintiff testified that her supervisor, Lorton, was already inebriated.

The Plaintiff further testified a woman identified as "Kim," who was a friend of Lorton's, brought three pairs of skimpy shorts, which Glemser

---

[1]This evidence is not material to the allegations in this case.  An individual's decision to have modeling photographs taken outside of work hours does not relate to allegedly sexually offensive conduct in the workplace. *See Burns v. McGregor Electronic Industries, Inc.*, 989 F.2d 959, 963 (8th Cir. 1993).  An individual's private life does not provide "lawful acquiescence" to such conduct at work.  *See id.*

described as underwear, to have a fashion show because it would be "a fun party" for the two women.  The Plaintiff believed the women thought she wanted to wear the outfit, and Kim asked her to do so.  However, the Plaintiff testified she was there to work, that she was not impaired and not present for the party.

The Plaintiff testified that Lorton asked her to wear the shorts. Lorton started to unbutton Glemser's pants and pull them down.  Glemser testified, "I realized she [Lorton] was so impaired that my pants were coming off.  They were – if I didn't take them off, she was taking them off." The Plaintiff testified that she did not leave the bathroom because she felt she was restrained because Kim was blocking the bathroom door and Lorton was in front of her with her hands on Glemser's pants.  The Plaintiff did not ask Kim to move to the side so she could exit the bathroom. Glemser believed Kim was intoxicated at the time.  Glemser testified she told Lorton, "Fine.  I'll wear them for you.  I'll put them on and that's it. And so I put them on myself."

Lorton testified that someone started taking pictures of the three

5

women after they changed into the shorts.  At her deposition, Lorton testified she agreed with Sugar Creek that "it was inappropriate to model boy shorts or even put them on in the workplace."  Following Sugar Creek's investigation, Lorton was verbally reprimanded.

B. Sexual harassment policy

The Plaintiff acknowledged having received a copy of the Sugar Creek Sexual Harassment Policy.  The Defendant claims Glemser admitted that she received training on the Sugar Creek Sexual Harassment Policy ("the policy").  Glemser contends this "training" consisted of Lorton handing the employee the manual, which the employee would then read.  Upon reading it, the employee acknowledges having read the manual by signing a document.  The Plaintiff admitted that she understood the policy.  One month before the alleged harassment, the Plaintiff received a copy of Sugar Creek's annual newsletter, which contained a reminder of the policy.

Glemser was aware that the policy instructed persons wishing to complain about sexual harassment to go directly to Sugar Creek's President if they did not feel the matter could be discussed with their supervisor or

if they were not satisfied with the way it was handled.  The Defendant alleges that Plaintiff never contacted or arranged for a conference with Sugar Creek's President to discuss her allegation of harassment.  The Plaintiff disputes that allegation, claiming that her boyfriend (now husband), Brett Chiaro, to whom she gave power of attorney to speak on her behalf, left messages for the President of the company and continually asked Reana Pilgrim to speak with the President.  Sugar Creek has a phone message stating that Mr. Chiaro wanted a call back from the President of the company by the following day.  The phone message reads: "Will go forward with charges if President of Co. does not call him back by this time tomorrow 1 p.m."

The Plaintiff was aware that the policy stated that there would be no retaliation of any kind for a complaint of sexual harassment.  No one at Sugar Creek ever threatened the Plaintiff with retaliation.  Glemser's fear of retaliation was based solely on conclusions that she had drawn in her own mind.

C. The Plaintiff's decision to end her employment

7

Although the Defendant alleges Glemser admitted in her deposition that she decided to quit her job when she arrived at work on the morning of December 7, 2006, the Plaintiff's testimony when read in context suggests that she decided to end her employment at Sugar Creek after the events of the day. She quit her job at Sugar Creek on December 8, 2006. Glemser testified that when she called to report the alleged events of December 7, 2006, she had already determined she would not be returning to work.

The Plaintiff did not complain to Sugar Creek management or arrange for a conference with management to discuss any alleged incident of sexual harassment before deciding to quit. The Defendant alleges Glemser testified that the alleged sexual harassment was not reported to Sugar Creek until Tuesday, December 12, 2006. However, Glemser states that Lorton, her supervisor, as a participant was aware of the incident when it happened. Moreover, Chiaro addressed the incident with Lorton on December 11, 2006. At that time, the Plaintiff alleges Lorton contacted Reana Pilgrim about her contact with Chiaro. Sugar Creek asserts Pilgrim told Chiaro

8

that she needed to speak with Glemser to get her side of the story.

The Defendant alleges that on December 12, 2006, Brett Chiaro contacted Sugar Creek to demand a payment be made to Glemser. Glemser testified that she sought a payment amount from Sugar Creek as a means of obtaining justice.[2]

The Defendant has moved for summary judgment, claiming that the incidents occurring on a single day were not sufficiently severe and pervasive to support a claim for hostile work environment and because the Plaintiff failed to follow the policy. Sugar Creek further asserts that Glemser's claim of constructive discharge fails because the occurrence is insufficient to create intolerable conditions such that a reasonable person would have no choice but to quit and because she failed to report the

---

[2]The Plaintiff contends that the allegations contained in this paragraph are immaterial because they relate to settlement negotiations. Pursuant to Rule 408 of the Federal Rules of Evidence, evidence of compromise offers and negotiations are prohibited in many circumstances. Because the demand for payment occurred at approximately the same time the conduct was reported to Sugar Creek and immediately after Glemser decided to end her employment, which was before any investigation could be conducted, the Court does not believe it is accurately described as relating to settlement negotiations. The payment demand may qualify as a request for a severance payment.

incident before ending her employment.

The Plaintiff contends there are issues of material fact which preclude the entry of summary judgment.  She asserts the incidents of harassment were so severe or pervasive as to alter the conditions of Glemser's employment and create an abusive working environment.  Glemser further contends that her claims of harassment are sufficient to support her claims of constructive discharge.

## III. DISCUSSION

### A. Legal standard

Summary judgment is appropriate if the motion is properly supported and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a).  The Court construes all inferences in favor of the Plaintiff.  *See Siliven v. Indiana Dept. of Child Services*, 635 F.3d 921, 925 (7th Cir. 2011).  To create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture."  *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted).

Because summary judgment "is the put up or shut up moment in a lawsuit," a "hunch" about the opposing party's motives is not enough to withstand a properly supported motion. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Ultimately, there must be enough evidence in favor of the non-movant to permit a jury to return a verdict in its favor. *See id*.

B. Hostile work environment

To establish a prima facie case of hostile work environment based on sexual harassment, a plaintiff must offer evidence that: "(1) her work environment was both objectively and subjectively offensive; (2) the harassment complained of was based on her [sex]; (3) the conduct was either severe or pervasive; and (4) there is a basis for employer liability." *Porter v. City of Chicago*, 700 F.3d 944, 955 (7th Cir. 2012) (internal quotation marks and citation omitted). In most cases, it is a combination of severity and frequency that constitutes actionable harassment. *See Patton v. Keystone RV Co.*, 455 F.3d 812, 816 (7th Cir. 2006). However a single act, if sufficiently severe, can create a hostile work environment, *see Berry v. Chicago Transit Authority*, 618 F.3d 688, 692 (7th Cir. 2010), "and

11

instances of uninvited physical contact with intimate parts of the body are among the most severe types of harassment." *See id*; *see also Patton*, 455 F.3d at 817.

In determining whether the evidence rises to the level of actionable harassment, a court considers the totality of the circumstances, including "the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance." *Porter*, 700 F.3d at 955-56. An employer may not be held liable for a hostile work environment created by co-workers if the employer promptly and adequately responds to the harassment. *See Sutherland v. Wal-Mart Stores, Inc.*, 632 F.3d 990, 994-95 (7th Cir. 2011).

The Plaintiff contends that the conduct here was significantly more offensive and sexually harassing than mere words, sexual innuendo, or vulgar banter. Glemser testified her pants were being pulled down without her consent, while she was blocked from leaving the restroom. Someone took a picture when she was pushed out of the bathroom while wearing the

shorts.  Moreover, the Plaintiff stated she observed multiple individuals engaged in actual or simulated sexual activity, while one of the men was pouring an alcoholic drink over a woman's belly button area and licking it off.[3]

The Plaintiff contends that, although all of these events occurred on the same day, they amount to far more than an isolated incident of sexual harassment and are objectively severe enough that no reasonable person would think they did not alter Glemser's work environment.

---

[3]The Defendant contends this conduct was not alleged in the Plaintiff's EEOC Charge and should thus not be considered by the Court.  The Charge states, in pertinent part, "On or about December 7, 2006, I was sexually assaulted in the work place.  I was constructively discharged on or about December 8, 2006."  Although these allegations are very general, "a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint."  *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).  A plaintiff may pursue claims which are "like or reasonably related to the allegations of the [administrative] charge and growing out of such allegations."  *Teal v. Potter*, 559 F.3d 687, 691-92 (7th Cir. 2009) (internal quotation marks and citation omitted).  The Court construes the allegations liberally and it is sufficient if "there is a reasonable relationship between the allegations in the charge and those in the complaint." *See id*. at 692.  In Paragraph 8(F) of her Complaint, Glemser alleges she was forced "to watch as Lorton and another woman simulated a sex act."  Given this liberal standard and because it does not appear she was assisted by Counsel in drafting the EEOC Charge, the Court concludes that the allegations are part of the Plaintiff's hostile work environment claim.

13

Even assuming that the Plaintiff is able to meet the first three elements of a hostile work environment claim, the Court concludes that the claim must fail because Glemser is unable to satisfy the final element. "An employer can generally avoid liability for a hostile work environment if it promptly investigated complaints made by the plaintiff and acted to stop the harassing behavior." *Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 392 (7th Cir. 2010). "[A] prompt investigation is the hallmark of a reasonable corrective action." *Porter v. Erie Foods Intern.*, 576 F.3d 629, 636 ( 7th Cir. 2009) (internal quotation marks and citation omitted).

Because Glemser never returned to work after the events of December 7, 2006, and ended her employment at Sugar Creek on December 8, 2006, there is no basis for employer liability. Glemser testified that when she reported the alleged events of December 7, 2006, she had already determined she would not be returning to work. The allegations were not reported to the appropriate individuals until December 11 or 12, 2006. An employer cannot be expected to remedy harassment unless the employee informs the employer about the situation. *See Parkins v. Civil Constructors*

14

*of Illinois, Inc.*, 163 F.3d 1027, 1038 (7th Cir. 1998).

Although the Plaintiff did not report the alleged harassment until she resigned her employment, the Defendant followed through and conducted an investigation of her allegations. To the extent possible, the investigation appears to have been in accordance with the policy. Sugar Creek officials could not interview Glemser or directly address the details with her because she was no longer employed there.

The Plaintiff had read and understood the policy and knew that individuals who wanted to complain about sexual harassment were instructed to go directly to Sugar Creek's President if they did not believe the matter could be discussed with their supervisor or if they were not satisfied with how a situation was handled. Because Glemser quit her job without ever contacting or arranging a conference with the president, Sugar Creek was not able to investigate her claims and subsequently take corrective measures.

For the foregoing reasons, the Court concludes there is no basis for employer liability. Because the Plaintiff is unable to assert a prima facie

case, the Defendant is entitled to summary judgment on her hostile work environment claims.

C. Constructive discharge

To establish constructive discharge, a plaintiff must show that her working conditions, from an objective standpoint, "became so intolerable that her resignation qualified as a fitting response." *Pa. State Police v. Suders*, 542 U.S. 129, 133 (2004). The Supreme Court explained:

> An employer may defend against such a claim by showing both (1) that it had installed a readily accessible and effective policy for reporting and resolving complaints of sexual harassment, and (2) that the plaintiff unreasonably failed to avail herself of that employer-provided preventive or remedial apparatus. This affirmative defense will not be available to the employer, however, if the plaintiff quits in reasonable response to an employer-sanctioned adverse action officially changing her employment status or situation, for example, a humiliating demotion, extreme cut in pay, or transfer to a position in which she would face unbearable working conditions.

*Id*. at 134. As this Court previously noted, the record here establishes that Sugar Creek had a policy in place and Glemser did not avail herself of its protections.

The Seventh Circuit has recognized two different forms of

16

constructive discharge.  *See Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010).  In the first type of case, an employee resigns due to discriminatory harassment.  *See id*.  The working conditions must be even more egregious than those required to support a hostile work environment claim because employees are typically expected to remain employed while seeking redress, to enable the employer to address the matter before it causes the employee to quit.  *See id*.  A threat of violence or serious threat to the employee's safety is an example of this form of constructive discharge.  *See id*.  The second type of constructive discharge is when the employer "acts in a manner so as to have communicated to a reasonable employee that she will be terminated."  *See id*. (internal quotation marks omitted).  In such a circumstance, if the employee resigns, the employer's conduct may constitute a constructive discharge.  *See id*.

The Plaintiff testified that every Thursday morning, she arrived at the office to find evidence of a party having occurred the night before.  Glemser testified that at times, the office was used "for parties, for drunkenness."  The Plaintiff further stated "that things happened after the socials that put

17

people at risk."  Because of these occurrences, the Plaintiff alleges she dreaded coming to work on Thursdays.

The individual behind the harassing behavior on December 7, 2006 was Lorton, Glemser's direct supervisor.  The Plaintiff contends that the escalation of events on that day made it impossible for her to return to work on December 8.  In addition to the usual mess from the night before, Glemser claims she had to deal with the following: being forced to try on underwear in front of her supervisor, while being barricaded in a bathroom; having her picture taken in the underwear; being forced to watch as others paraded around the workplace in underwear; and viewing sexual activity or simulated sex acts occurring within the office.

The Plaintiff claims that based on the foregoing, a reasonable person would have felt compelled to resign given the escalation of events on December 7, 2006.  Glemser testified that because she felt completely violated and that a crime had occurred, she contacted the police to report what had happened.  No charges were filed.

The Court is unable to conclude that the working conditions at Sugar

Creek were such that a reasonable person would have been forced to resign. This case centers on a birthday party that, by all accounts, involved conduct that went way over the line of acceptable workplace behavior. There are other general allegations of inappropriate behavior that are not really developed. This case does not involve a threat to the Plaintiff's safety or a suggestion that her employment was in jeopardy.

Significantly, Glemser has not pointed to any similar cases which involved conduct that amounted to constructive discharge and the Court is aware of none. While the Plaintiff may have been appropriately shocked and disgusted by the events at her workplace on December 7, 2006, the Court holds as a matter of law that they did not meet the high threshold necessary to support a constructive discharge claim. The Defendant is entitled to summary judgment on those claims.

## IV. CONCLUSION

Although the allegations suggest that the events of December 7, 2006 at Sugar Creek were boorish, sophomoric and crude and involved totally inappropriate workplace behavior, the Court must conclude that the

19

Defendant's conduct did not rise to the level of a hostile work environment or a constructive discharge.  Accordingly, the Defendant is entitled to summary judgment on those claims.

To the extent the Plaintiff has asserted any supplemental state law claims, the Court declines to exercise jurisdiction because no federal claims remain.  *See* 28 U.S.C. § 1367(c)(3); *see also Sharp Electronics Corp. v. Metropolitan Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009) ("Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.") (internal quotation marks omitted).

<u>Ergo</u>, the Motion of Defendant Sugar Creek Realty, LLC d/b/a/ as Pine Woods Apartments for Summary Judgment [d/e 15] is ALLOWED as to the Counts asserting Hostile Work Environment and Constructive Discharge.  Any remaining state law claims are DISMISSED without prejudice.

Judgment shall be entered in favor of the Defendant and against the Plaintiff.

All other motions are DENIED as MOOT.

The final pretrial conference set for October 11, 2013 at 2:00 is CANCELED.

This case is terminated.

ENTER: September 6, 2013

FOR THE COURT:

*s/Richard Mills*
Richard Mills
United States District Judge

21